## WILLIAM HOPKINS *et al.*

*v.*

## E. A. MEDLEY *et al.*

*Filed at Mt. Vernon February 3, 1881.*

1. PARTITION—*of the pleadings therein—whether as at law, or in chancery.* A petition for the partition of land, under the statute, is a suit at law, and not in equity, and, as such, the proceedings, except wherein otherwise provided, should conform, as far as practicable, to the procedure which obtains in courts of law, and this requirement is not at all affected by the fact that the statute authorizes the court to adjust the equities of the parties the same as a court of equity might under a like state of facts, nor from the fact that service is required the same as in chancery cases, and that the answer may be required under oath. It is an action at law and a substitute for the old common law action of partition.

2. The defendant in a proceeding for partition under the statute, may file such plea or pleas, other than pleas in abatement, as are usual in common law actions, and are appropriate to the defence which he may think proper to interpose, or to the relief which he himself may seek. The word "answer," in the Partition act, is used in its generic or extended sense, and not with reference to any particular form of pleading, every plea in bar being, in its extended sense, deemed an answer.

3. A petition for partition being an action at law, the answer can not be regarded as anything more than the defendant's plea, the sufficiency of which should properly be determined upon demurrer; but if exceptions are filed to it, they must be treated as a demurrer, and nothing more.

4. The defendant may plead any plea which may afford him any defence, and which shows either that the plaintiff ought to have no relief whatever, or that his relief ought to be different from that which he claims. It must, of course, take issue with one or more of those allegations which are essential to every complaint in partition. It must either deny that the plaintiff is in possession, or that the parties are co-tenants, or that the property sought to be divided is subject to compulsory partition. If no issue be taken on some of the essential allegations of the complaint, then some affirmative matter must be stated showing that the plaintiff is not entitled to any relief, or to the relief sought. The answer of the defendant, whether in form of a plea or pleas, or otherwise, where the petition is in a court of law, is to be judged and tested by the principles applicable to pleadings at law.

5. SAME—*plea in abatement not allowed in suit for partition.* In a suit for the partition of lands, no plea in abatement is allowed by statute, nor will such suit abate by the death of any tenant.

6. SAME—*partial defence—amending petition.* Where the answer to a petition for partition admits the purchase of the land by a remote owner, but charges that he sold and conveyed a specified part of the lot to another, under whom the defendants claim, before the sale by him to a party under whom the petitioner claims,—this part of the answer will present a good plea in defence of the relief claimed. which was as to the entire lot, and the petitioner can not recover at all without amendment.

7. SAME—*as to improvements under claim of ownership.* So, where the answer charged that a certain person, assuming to be the owner in fee of the lot, conveyed the same to another, who thereafter claimed to be the owner in fee, and who, while in possession and so claiming to be the exclusive owner, through loans from the defendant and others, erected a large three story brick building thereon of the value of from $4000 to $5000, the lot before that time being comparatively unimproved and not worth more than five or six hundred dollars, and showing that the defendant, through several mesne conveyances, had succeeded to all the interest of the party so improving the same, it was held as showing a good defence in part to the relief sought, and that the petitioner was not entitled to share in the enhanced value of the lot caused by the improvements made thereon in good faith under an honest belief of absolute ownership.

8. PLEADING—*surplusage not reached by demurrer.* Surplusage in a pleading can not be reached by a demurrer, or exception to an answer in the nature of a plea.

9. SAME—*qualities of a plea—general rule at law.* At law, it is sufficient if the defendant's plea shows that the plaintiff is not entitled to recover. This may be done in several ways. The defendant may deny all the facts in the declaration, or, where it consists of several facts, he may pass over any one or more of them, and single out some particular one and traverse that alone, or he may admit them all to be true, and set forth a new state of facts, which, in law, shows the plaintiff has, notwithstanding the facts alleged, no right of recovery, and in either case the plea will be good.

10. SAME—*difference in chancery pleading and at law.* There is also this difference in the systems of pleading in equity and at law : Whatever is not admitted by the answer must be proved by the complainant, although it is not denied, whereas at law everything which is not denied is, by implication, admitted to be true.

11. PLEADING IN CHANCERY—*requisites of answer.* In a chancery suit, if a defendant answers, he must do so fully. It is not sufficient for him to set up a state of facts, which, if true, would defeat the complainant's right to relief, but he must also, either admit or deny the charges in the bill, or his answer will be subject to exception. In actions at law the rule is very different.

12. DEFAULT—*setting aside.* The attorney of a defendant in a partition suit, in which a default has been taken, in which answer under oath was

required, owing to other pressing professional business, was unable in time to make the necessary examination for preparing an answer, the defendant residing in a distant part of the State, and the attorney also showed, by his affidavit, that he believed the defendant had a good defence, and that the facts constituting such defence were not within the knowledge of the defendant, who necessarily relied upon him to investigate and ascertain the facts constituting the defence, also that the facts occurred many years before, and that he had not had time sufficient to ascertain such facts with any degree of certainty, and to have procured the defendant's oath before the default was taken, and that it would have been wholly impossible for him to have prepared the case for trial at such term of court. It was held, in view of the facts of this case, that the default ought to have been set aside.

13. STATUTE—*adopted from another country—rule of construction.* Where the legislature adopts a statute of Great Britain, it must be presumed to have adopted it with the construction already given it by the English courts.

WRIT OF ERROR to the Circuit Court of Clay county; the Hon. WILLIAM C. JONES, Judge, presiding.

This was a petition by defendants in error, against plaintiffs in error, in the Clay county circuit court, for the partition of lot 9, block 20, in the town of Flora, this State. The charging part of the petition was as follows:

Petitioners say that they are the owners in fee of the undivided $\frac{45}{56}$ of lot No. 9, block 20, in the town of Flora, Illinois; that Samuel White purchased of the United States the northwest quarter of the south-west quarter sec. 25, town. 3, range 6, etc. White conveyed to John Brown, trustee, the undivided half of said north-west south-west. In 1854, White and Brown platted the town of Flora. John Brown conveyed said lot to White; White conveyed to H. G. Gunn; Gunn conveyed to I. C. Sailor; Sailor conveyed to Catharine Medley, the mother of complainants. In 1863, Robert Medley and Catharine Medley conveyed to Bishop & Howett; Bishop conveyed to Howett; and, November 26, 1863, Howett conveyed to Robert and Catharine Medley; November 30, 1863, Robert and Catharine Medley conveyed to Thos. Cooper; and Sep-

tember, 1864, Cooper conveyed to Catharine Medley. Catharine Medley died in 1870, leaving Robert Medley, her husband, and W. T. Medley, Charles Medley and petitioners, her children.

Afterwards, Robert Medley and W. T. Medley conveyed by warranty deed to other parties. Afterwards, said Chas. Medley died intestate. After the death of Catharine Medley, Robert Medley had an estate by curtesy and possession, and was entitled to possession till his death.

. Arthur Farrar, Samuel Wheeler and William Hopkins now own the interest conveyed by said Robert and W. T. Medley, and own $\frac{11}{56}$, as tenants in common with petitioners. Robert Medley died January 1, 1880, and by reason of his death, said curtesy is extinguished. Petition requires answer under oath, and asks for partition.

A plea by defendants, alleging that, at the time of filing the petition, the west half of the lot was occupied by Jennie and L. B. Steele, as tenants for years, under Hopkins, and the west half by Kenner, as tenant for years, under Farrar & Wheeler, was, on motion of petitioners, stricken from the files, and the defendants excepted.

An application for a continuance was then made by defendants, founded upon an affidavit by Hopkins, setting up substantially the same facts contained in his answer, and alleging that further time was necessary for investigating and correctly ascertaining the facts, etc. The application was overruled, and the defendants excepted. And, thereupon, the defendants filed an answer, the charging part being, in substance, as follows:

Defendants say : It is true that the petitioners are the heirs at law of Catharine Medley, and that Samuel White purchased of the United States the north-west south-west of said section 25; but that, afterwards, said Samuel sold and conveyed to Wm. White a part of said tract, including, as these defendants are informed and believe, about one-half off the south end of said lot 9, and at the time of said conveyance of Sam-

uel White to H. G. Gunn, said White was not the owner of a part of said lot, being the undivided one-half of said south end of said lot, and that said interest in said south end became vested in said W. T. Medley. (Other conveyances recited in petition are admitted). That at the time of the death of said Catharine Medley the said lot was unimproved, except that there was an old and nearly valueless frame dwelling house thereon. That said lot was worth about five or six hundred dollars. That, after the death of said Catharine, said Robert regarded himself as the owner in fee of said lot, and conveyed the same to said W. T. Medley, on November 16, 1871; and the said W. T. Medley, from that time forth, considered himself as the owner in fee of said lot; that the said W. T. and Robert Medley procured an abstract of the title to said lot from John Apperson, a trustworthy and competent abstractor of titles in said county, which abstract purported to be an abstract in full of all the conveyances of said lot, but that said abstract did not disclose the said conveyance from Robert Medley and Catharine Medley to Cooper, and said Robert Medley, as the surviving husband of Catharine Medley, was supposed at her death to become the owner of the entire fee to said lot, and that, on the faith of such abstract, the conveyances hereinafter mentioned were all made. That said W. T. Medley represented himself to the defendants as the owner in fee of said lot, and upon the faith of such abstract and the representations aforesaid, this defendant loaned to said W. T. Medley the sum of $2500, which sum was expended by said W. T. Medley in the erection and completion of a large three-story brick building, now standing on said lot, and of the value of four or five thousand dollars. That said W. T. Medley procured, also, in March, 1873, a loan of $1500 of M. A. Wolf, securing the same by trust deed, with covenants of general warranty on the west half of said lot. That on October 27, 1874, said W. T. and Robert Medley, by their deed, with usual general covenants of warranty, subject to said trust deed for the use of M. A.

Wolf, conveyed the west half of said lot to said Arthur Farrar and Samuel Wheeler, for the consideration of $3500 paid by said Farrar and Wheeler, part of which was paid by said Farrar and Wheeler assuming and paying off said debt to Marcus A. Wolf. That the east half of said lot was conveyed by said Robert and W. T. Medley, by warranty deed, to Hunley and Stanfield, and afterwards to Fremont Frazee, who succeeded to all the rights and equities of said Hunley and Stanfield, who purchased said east half for a consideration of $4000. That the said $2500 advanced, as aforesaid, by said Wm. Hopkins, was advanced for the purpose of completing said brick building, then in process of erection, and was secured by a deed of trust, with the usual covenants of warranty, by Robert and W. T. Medley, to Rufus Cope, as trustee. That a large part, affiant can not state how much, of the purchase price paid by Farrar and Wheeler for said west half of lot 9, was expended in finishing said building. That said Hopkins has succeeded to all the rights of said Fremont Frazee in said east half of said lot. That no part of said building was erected with the means of said Catharine Medley, but that the entire cost of the same was paid by W. T. Medley out of the funds derived as above stated, except a part thereof, affiant can not state the amount, but he believes the amount was not large, derived from the means of Robert and W. T. Medley, and invested in said building in the belief that they were the legal owners of said lot. That the entire amount of money realized out of the said several mortgages or deeds of trust, and said conveyances, was either expended in the erection of said building or went into the hands of the complainants herein, as the heirs or legatees of said W. T. Medley, and, since his death, has been enjoyed by them, and is now owned and enjoyed by them. That the defendants, as the grantees of said W. T. Medley and Robert Medley, are entitled, by virtue of their warranty of good and sufficient title, indefeasible and free from incumbrance, to the said lot, in case of a failure of said title, to be

reimbursed for whatever loss they may suffer, out of the assets of the estate of said Robert and W. T. Medley, in the hands of said complainants, or which have been received by them from the estate of said Robert and W. T. Medley. That said petitioners, except the said E. A. Medley, are in such a condition financially, that, by suit at law, these defendants would be unable to collect the sums which they would be entitled to recover, in case said petitioners should prevail in their said petition, unless these defendants can be protected in the division of the property in controversy.

They further say, that Jennie Steele and L. B. Steele are occupants, as tenants for years, of the east half of said lot, and that Jay Kenner is occupying the west half of said lot, as a tenant for years, and that said parties were occupying as aforesaid, at the time of the commencement of this suit. These defendants, therefore, say that they are entitled to have allowed them the value of the improvements made on said lot, as herein recited.

Farrar and Wheeler, being residents of Chicago and not present, the answer was sworn to only by Hopkins, and was, therefore, treated as his answer alone. Farrar and Wheeler were called and defaulted, and a decree *pro confesso* was entered against them, and a number of exceptions were filed to the answer as to Hopkins, the first and third of which were sustained, and, not answering further upon being required to do so, a decree *pro confesso* was also entered against him. The first and third exceptions are as follows:

*First*—Answer does not sufficiently set out the conveyance of a part of the lot described by Samuel White to William White, and does not sufficiently state how W. T. Medley became vested with that portion of said lot.

*Third*—Answer is impertinent in alleging Jay Kenner, Jennie Steele and L. B. Steele in possession of lot, and in asking allowance for improvements.

An application was made to set aside the default as to Farrar and Wheeler founded upon the affidavit of their counsel,

stating that Farrar and Wheeler reside in Chicago; that about two weeks before this·court, affiant was called to go to Arkansas, to attend a circuit court in that State; was absent about one week; and on his return he received a communication from said defendants regarding said cause; that he gave the matter of the defence to said suit immediate attention, first making an abstract of title thereto; that said defendants have, as affiant believes, a good defence to the claim of said plaintiffs as set up in the answer of Wm. Hopkins, herewith filed; that the facts constituting such defence, were not within the knowledge of said defendants; that they necessarily relied upon affiant to investigate and ascertain the facts constituting their defence and necessary to be set up in their answer; that the facts involved in said defence occurred years ago, and that in order to be able to ascertain them with any degree of certainty required an amount of time which it was impossible for affiant to have at his command during the present session of court, in time to procure the oath of said defendants to an answer before said default was taken; and affiant, from his knowledge of said cause says, on his oath, that it would have been wholly impossible for him to have prepared said defence for trial at this term; that in matters of the character and importance of those involved in this suit, it has been the common practice in this court, to give reasonable and sufficient time to counsel, for the preparation of pleadings and in preparing for trial; and affiant further says, that until three or four days before said default was taken, he had overlooked the fact that the petition of plaintiffs herein required an answer under oath, and that after that he did not have sufficient time to procure the attendance of said defendants, who were, as affiant believes, in the state of New York, etc.

This application was denied, and final decree entered against the defendants, in conformity with the prayer of the petition.

Mr. RUFUS COPE, for the plaintiffs·in error.

Mr. F. G. COCKRELL, and Mr. W. B. COOPER, for the defendants in error.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The importance of this case, both with respect to the legal questions involved and the value of the property depending upon its determination, has induced us to give it our most careful and deliberate consideration, and also to set out more fully than is usual the proceedings in the court below, so that its real merits may be presented in as clear and compendious a light as possible.

A reversal is asked upon a number of grounds:

*First.*—It is insisted that the court erred in striking the plea in abatement from the files. This objection is not well taken. Section 21 of chapter 1 of the Revised Statutes provides: "No plea in abatement shall be received in any suit for partition, nor shall such suit abate by the death of any tenant." This section is almost a literal copy of the 3d section of chapter 31 of 8 and 9 W. III, which was passed by the English Parliament to remedy some of the delays and inconveniences of the common law action of partition. The only difference between the two sections is, the 3d section of the English statute contains the words "admitted or" immediately before the word "received." 2 Sellon's Prac. 214. In construing this section of the English statute, it is uniformly held that no plea in abatement is admissible in partition proceedings, and in adopting it the legislature must be presumed to have intended to adopt it with the construction already given it by the English courts. 2 Sellon's Prac. 217. Indeed, it is difficult to conceive how any other construction could have been placed upon it. The language of the section is clear and unequivocal. We are of opinion, therefore, the plea in question was properly stricken from the files.

Plaintiffs in error also complain of the action of the court in refusing to continue the cause and to set aside the default as

to Farrar and Wheeler. Passing these questions, at least for the present, we proceed at once to the more important question: Was the circuit court warranted in sustaining the exceptions to the answer, defaulting the defendants, and rendering the final judgment in the cause in the manner it did?

Preliminary to passing upon this question, it is important to consider somewhat the character of the proceeding and the principles and rules of practice which should govern it. For, whether the decision of the court below in sustaining the exceptions to the answer was right or wrong, depends, in some respect, upon whether it is to be determined by principles which govern pleadings at law, or those which govern pleadings in equity.

In the first place, it is to be observed, there is no question or controversy here, as is sometimes the case, as to whether the proceeding is by bill, or by petition under the statute. It is clearly the latter, and as such, according to the previous decisions of this court, it must be regarded as a suit at law and not in chancery, and it therefore follows, that the proceedings, except when otherwise provided, should conform, as far as is practicable, to the procedure which obtains in courts of law, and this requirement is not at all affected by the fact that the present statute authorizes the court, in such cases, to adjust the equities of the parties to the same extent that a court of equity might under a like state of facts. The change in the statute, in this respect, does not at all affect the character of the court, as a court of law, when exercising this equitable jurisdiction. Its only effect is to confer additional jurisdiction in a specific class of cases, in which courts of equity had previously exercised exclusive jurisdiction There is nothing in the nature of many equitable rights that requires them to be administered exclusively in courts of equity. They might be administered just as well in a court of law, if the law so provided. This is practically demonstrated by the code system which prevails in many of the States of this Union. Formerly, the answer in partition at law was not

required, in any case, to be under oath, but the statute is now so modified that the petitioner may, if he elect to do so, require the answer of the defendant to be verified by oath. In like manner there are certain pleas in proceedings at law which are required to be verified by the oath of the defendant. But such verification of the pleadings has never been supposed to affect the character of the proceeding, as a suit at law.

In *Louvalle* v. *Menard,* 1 Gilm 39, before this change in the statute occurred, this court, in speaking of the character of the proceeding, said : " The mode of obtaining a division of real estate, given by this statute, was evidently intended to take the place of the common law remedy by the writ of partition.  *  *  *  In this proceeding the defendants are not, as in suits in equity, required to make discovery, or even to answer the petition under oath, and the testimony is not necessarily taken by depositions, but may be introduced *viva voce* at the hearing. The proceedings are summary and *in rem.* The court is to act on the legal estate, and not on the equities of the parties. Its only duty is to ascertain their respective legal interests in the premises, and direct a division among them accordingly."

In *Greenup* v. *Sewell,* 18 Ill. 54, where the same subject was under consideration, we said : · " The proceeding, under the statute, for partition, is strictly a proceeding at law, like the common law writ of partition, in which mere equitable claims or titles can not be investigated and determined." Without citing others, these authorities fully establish the proposition that the proceeding in question is an action at law, and a substitute for the old common law action of partition. So far as the procedure is defined by the act, of course that must be substantially pursued.

The first section defines who are entitled to partition, and gives all such the right to proceed by petition or bill, as they may elect, thus clearly recognizing the fact that they are, in contemplation of law, two distinct proceedings. The act then

proceeds to provide where such suits shall be brought, how they shall be brought and defended by persons laboring under disabilities, and to define what the petition shall contain. It also expressly provides, that service, whether by notice, copy of petition, or by personal service of the summons, shall be in the same manner as in chancery cases.

It is further declared that the answer of the defendant, when required under oath, shall have the same effect as sworn answers in chancery. The specific provisions, with reference to service and the effect of a sworn answer, are the only ones that make any reference to the procedure in chancery cases. And we presume that it will hardly be contended that these provisions have the effect of changing the suit from a legal into an equitable proceeding.

Suppose our common law procedure was so modified by legislative enactment as to require the same mode of service in all actions of assumpsit, as is required in chancery causes, and it was further provided, that all special pleas in assumpsit setting up new matter by way of confession and avoidance, when required by the plaintiff, should be verified by affidavit, and when so verified, they should have the same effect as an answer in chancery,—no one would contend for a moment, that such legislation would have the effect of changing actions of assumpsit into suits in equity, or otherwise change the practice or procedure in such actions. So far as the mode of service is concerned, that is purely arbitrary, and does not at all affect the character of the action, and the provision giving the answer in a partition at law the same effect as a sworn answer in chancery, affects only the measure and mode of proof in the cause, and is simply equivalent to declaring that the answer, when thus sworn to, shall be taken as true, unless overcome by the testimony of two witnesses, or that which is equivalent to the testimony of two witnesses. Of course some actions at law are more equitable than others, depending upon the mode of procedure and the equitable character of the rights administered, but these actions are

still at law, and are governed by the rules and principles applicable to such actions.

The proceeding in this case, then, being clearly a suit at law, and, as such, pending in a court of law only, on principle, the answer can not be regarded as anything more than the defendant's plea, whose sufficiency should properly have been determined by a demurrer, and, in any view, the exceptions must be treated as a demurrer, and nothing more. Under certain circumstances important consequences flow from this distinction.

In a chancery proceeding, if a party submits to answer, it is well settled he must answer fully. It is not sufficient for him to set up a state of facts which, if true, would defeat the complainant's right of recovery. He must, also, either admit or deny the charges in the complainant's bill, otherwise his answer will be subject to exception.

This double office which an answer in chancery performs, results, mainly, from the frame of the bill. Originally, all bills were framed for purposes of discovery, as well as relief. Hence, every bill not only stated the facts upon which the complainant relied, but also required the defendant to answer under oath, the charges in the bill, and to this end the bill also contained specific interrogatories founded upon the matters therein stated, which the defendant was bound to answer. And such is often the practice of the present time, though not universally so, as in ancient times. 2 Daniell's Chancery Practice, 813.

In a proceeding at law, however, the rule is altogether different. It is sufficient if the plea of the defendant shows that the plaintiff is not entitled to recover. This may be done in several ways. The defendant may deny all the facts in the declaration, or, where the defence consists of several facts, he may pass over one or more of them and single out some particular one and traverse that alone, or he may admit them all to be true, and set forth a new state of facts, which, in law, shows the plaintiff, notwithstanding the facts alleged,

has no right of recovery; and, in either case, the plea will be good. There is, also, this diversity in the two systems of pleading. Whatever is not admitted by the answer to be true, in a chancery proceeding, must be proved by the complainant, although it is not denied; whereas, in a pleading at law, everything which is not denied is, by implication, admitted to be true.

Keeping in view this diversity which prevails with respect to the principles which control the procedure in courts of law and courts of equity, we pass at once to the consideration of the sufficiency of the answer.

It admits that petitioners are the heirs of Catharine Medley, the purchase of the lot by Samuel White from the government, but charges that he sold one half off the south end of the lot to William White, and that Samuel White, at the time of his conveyance to Gunn, through whom petitioners claim, was not the owner of the undivided south half of the lot, and that the interest therein became vested in W. T. Medley, through whom defendants claim. It also charges, that the lot, at the time of Catharine Medley's death, was unimproved, except an old and nearly valueless frame house, and was not worth over five or six hundred dollars; that after her death, to-wit: on the 16th of November, 1871, Robert Medley, assuming to be the owner in fee of the lot, conveyed the same to W. T. Medley, who thereafter claimed to be the owner in fee; that while in possession and so claiming to be the exclusive owner in fee, W. T. Medley, through loans from Hopkins and others, erected thereon a large three-story brick building, which is now of the value of from four to five thousand dollars, and afterwards, for the consideration of $3500, conveyed the west half of the lot to Farrar and Wheeler, a large portion of the consideration being applied in discharging the incumbrances which had accrued in improving the lot, as above stated; and that, for the consideration of $4000, he also conveyed the east half to Hunley and Stanfield, who conveyed to Frazee, and that defendant

Hopkins has succeeded to all Frazee's interests and rights in the same.

Upon this state of facts it would be the grossest injustice to give the petitioners an equal interest in the enhanced value of the lot. If the facts alleged in the answer be true,—and, for the purpose of passing upon its sufficiency, we must assume them to be so,—not a dollar of their money was contributed to making the valuable improvements erected on the lot by W. T. Medley. Upon a partition between him and them, no one, we presume, would contend for a moment, that he would not be allowed the exclusive benefit of the improvements thus made by him; but it is equally clear, that his assignees, who, in good faith, purchased his interest in the lot, honestly believing, as is shown by the answer, that he was the exclusive owner, are, in equity, subrogated to all his rights. *Louvalle v. Menard, supra.*

Under the decree rendered, these valuable improvements, amounting to four or five thousand dollars, are taken from the defendants, who purchased them in good faith, presumably paying their full value, and absolutely given to the petitioners, who never paid for them a single cent. If the answer is to be regarded as simply the plea of the defendant, and its sufficiency is to be tested by the rules and principles which obtain in courts of law, it is substantially good,—for, admitting the facts therein alleged, it clearly shows the petitioners are not entitled to recover according to the case made by the petition.

Every plea in bar, in the generic or extended sense of the term, is deemed in law an answer, and doubtless the legislature used the term in the Partition act in this general sense, rather than with reference to any particular form of pleading. And that the act contemplates, or, at least, did contemplate, as originally framed, the ordinary course of pleadings and procedure as they obtain in courts of law, so far as applicable in carrying into effect the objects and purposes of the act, is manifest from the eighth section of the

act which, as now modified, constitutes the fifteenth section. It provided as follows:

"The court shall ascertain, from the evidence, in case of default, or from the confession, by *plea* of the parties if they appear, or from the *verdict* by which any issue of fact shall be determined, and shall declare the rights, titles and interests of all the parties to such proceedings—petitioners as well as defendants—and give such *judgment* as may be required by the rights of the parties."

We here see grouped together the three distinct ideas of a plea confessing the action, a trial by a jury, and the rendition of a judgment, rather than a decree, all of which are appropriate only to proceedings at law. In short, we are of opinion that the defendant, in a proceeding of this kind, may file such plea or pleas, other than pleas in abatement, as are usual in common law actions, and are appropriate to the defence which he may think proper to interpose, or to the relief which he himself may seek. And such seems to be the general doctrine on the subject. But for the statute, pleas in abatement might be interposed to actions of this kind just the same as to any others, and where no such statutory provision forbids, pleas in abatement are admitted the same as other pleas.

Freeman, in his work on Co-tenancy and Partition, in treating of this subject (section 495), says: "In the States of California and New York, and probably most of the other States, where statutory provisions have not directed to the contrary, the proceedings and pleadings on the part of the defendant in partition correspond with those in other actions."

In section 498, the same author says: "In the United States, it is generally understood that the defendant may plead any plea, including pleas in abatement, which affords him any defence to the plaintiff's petition, and which show either that the plaintiff ought to have no relief whatever, or that his relief ought to be different from that which he claims

27—97 ILL.

in his petition. The answer of the defendants may be confined wholly to showing that the plaintiff is not entitled to relief. If so, it must, of course, take issue with *one or more* of those allegations which we have shown to be essential to every complaint in partition. It must either deny that the plaintiff is in possession, or that the parties are co-tenants, or that the property to be divided is subject to compulsory partition. If no issue be taken on some of the indispensable allegations of the complaint, then some other matter must be affirmatively stated, as, that the plaintiff has no legal capacity to sue, or that there is another action pending between the same parties for the partition of the same property. \* \* \* Other and further pleadings may also be had between the parties respectively, *according to the practice* of the court, as in personal actions, until an *issue or issues* in law or in fact be joined between the parties or some of them."

The foregoing clearly shows that the answer of the defendant, whether in the form of a plea or pleas, technically so called, or otherwise, where the petition is pending in a court of law, is to be judged of and tested by the principles applicable to other pleadings in courts of law, and, as before stated, when the answer in the case before us is thus tested, it is substantially good. Even admitting the allegation excepted to for insufficiency was wanting in certainty, as claimed, still the answer, outside of that, shows clearly and beyond all question that Samuel White did not own the south half of the lot at the time of his conveyance to Gunn, and it follows, as a necessary consequence, that the petitioners have not the interest in the lot specified in their petition, and were not, therefore, entitled to recover at all without amending it. But, leaving this out of the question also, and assuming that defendants have only the $\frac{11}{56}$ of the lot, still the answer clearly shows that the defendants are entitled to the value of the improvements made by W. T. Medley.

So far as the third exception is concerned, treating it as a demurrer, it should not have been sustained. Taking the

petitioners' own view of the matter, the statement in the answer, to the effect that other parties were in possession of the premises, as tenants for years, who had not been made parties, can only be regarded as surplusage, which can not be reached by demurrer.

Upon the whole, as the case is now presented, we are satisfied that substantial justice has not been done in the disposition of it in the court below, and, for this and other reasons already given, we are of opinion the judgment of that court should be reversed, and the cause remanded so as to afford the parties an opportunity of having a trial of the cause on its merits.

Without stopping to discuss the error assigned upon the refusal of the court to set aside the default entered against Farrar and Wheeler and grant a continuance, we are of opinion, under the circumstances of this case, the ends of justice will be subserved by setting the default aside and permitting them to answer the petition as they may be advised, and it is accordingly so ordered.

The judgment is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Judgment reversed.*