(No. 11753.—Reversed and remanded.)

J. E. DAZEY et al. Appellees, vs. ROBERTIE BINKLEY et al. Appellants.

*Opinion filed December 18, 1918.*

1. DEEDS—*when deeds should be reformed to conform to intentions of the parties—fraud.* Where, either by mutual mistake or through the fraud and misrepresentations of the grantees, heirs are led to convey a larger interest in land than was contracted for or intended, they are not bound to ask that the deeds be declared void but may insist that the deeds be reformed so as to conform to the actual contract.

2. SAME—*court of equity will not uphold deed obtained by misrepresentations.* Where heirs are led to believe, by letters sent and statements made to them by the grantees, that deeds conveying all of their interests in certain land will not convey their interests in that portion of the land which is subject to their mother's right of dower, the deeds obtained by such fraudulent representations will not be permitted to stand in a court of equity unless reformed to conform to the intention of the parties.

3. PARTITION—*holder of deed given as a mortgage is not entitled to partition.* A grantee holding a deed given to secure a loan made by him is not the owner of such an interest in the fee of the land as will entitle him to maintain a bill for partition of the interest conveyed by the deed, as such a deed, though absolute in form, is but a mortgage.

4. SAME—*purchaser with notice of agreement not to partition is bound thereby.* One who obtains the interest of an heir with

knowledge of an agreement among all the heirs that the land shall not be partitioned for a certain period is bound thereby.

5. Pleading—*when question whether deed was a mortgage is properly raised.* Denial by the answers in a partition proceeding of an allegation of the bill that the complainant has purchased the interest of one of the heirs and become seized of such interest, puts in issue the complainant's ownership and authorizes proof that the deed of such heir was intended as a mortgage.

Appeal from the Circuit Court of Moultrie county; the Hon. George A. Sentel, Judge, presiding.

E. J. Miller, for appellants.

Whitaker, Ward & Pugh, and J. L. McLaughlin, for appellees.

Mr. Justice Carter delivered the opinion of the court:

Appellee J. E. Dazey filed a bill in the circuit court of Moultrie county, Illinois, to partition a quarter section of land in said county. The original bill was answered by the appellants and cross-bills were filed by some of them. When the pleadings were settled the cause was referred to a master in chancery to take evidence. After taking a large amount of evidence the master reported his conclusions, reporting that in his opinion Dazey was not entitled to the relief prayed for in the original bill and that there was not sufficient evidence to sustain the cross-bills and recommended their dismissal. The circuit court on hearing the objections to the report of the master, which were allowed to stand as exceptions to the report, ordered the cross-bills to be dismissed for want of equity and that partition should be awarded as prayed for in the original bill. From that decree this appeal was taken to this court.

The record shows that Joseph Neff departed this life intestate February 12, 1914, at his home in Moultrie county, seized of the title to the southeast quarter of section 23, township 15, north, range 5, east of the third principal me-

ridian, in said county. He left him surviving Sarah Neff, his widow, and nine children,—one son and eight daughters,—all adults. The eight daughters are married. His son's name is John Neff. His daughters are Dora Williams, Linnora Land, Etta Stevens, Mary Merritt, Elizabeth Foster, Robertie Binkley, Bell Kites and Alma Harman. On May 28, 1915, appellee J. E. Dazey filed his bill in said circuit court for partition, alleging that he was the owner of the undivided one-ninth interest formerly owned by the son, John Neff, in said premises. All the other heirs were made defendants to the bill. As we understand the record, all these defendants answered the bill, setting up a written contract made by them that no suit for partition should be brought as to said land for a period of eighteen months after the death of their father, and that Dazey had notice of such contract. They also denied in their answers that Dazey had such an interest in the premises as entitled him to ask for a partition. While this suit was pending E. M. Vennum procured deeds from Mrs. Binkley and Mrs. Land, and Dazey procured a deed from Mrs. Stevens, for their respective interests in the land in controversy. Thereafter Mrs. Binkley, Mrs. Land, John Neff and Mrs. Stevens filed cross-bills, alleging that their interests in the land were obtained from them by false and fraudulent representations made to them by Dazey and Vennum; that by said deeds they only conveyed each an undivided two-thirds of their respective one-ninth interests in said land, or 11.77 acres, instead of all their interests in said land, as recited in the deeds, and asked to have said deeds reformed accordingly. Dazey and Vennum answered the cross-bills, denying that the deeds were obtained by fraud or misrepresentation or that Dazey had any interest in the property deeded to Vennum. John Neff subsequently dismissed his cross-bill before the findings were made in the case. The decree found that Dazey was the owner of the two-ninths interests in said land formerly owned by John Neff and Etta Stevens and that Vennum

was the owner of the two-ninths interests formerly owned by Mrs. Binkley and Mrs. Land. Appellants, Mrs. Binkley and Mrs. Land, have brought the case to this court to review the decree of the trial court.

Appellee Dazey is the president of the First National Bank at Findlay, in this State. Appellee Vennum is an officer of the same bank. The transaction out of which this controversy arose had its inception, apparently, through a visit of the son, John Neff, who was then a resident of the State of Arkansas, to Findlay on May 26, 1915. On that date the evidence tends to show he procured $450 from Dazey and gave him a deed of all his interest in the land in controversy. We shall have occasion later to refer at greater length to the question as to whether this deed was intended as a deed or a mortgage. Two days after this instrument was executed Dazey filed this suit for partition. A few days later, June 1, 1915, he wrote to Mrs. Stevens, who was then a resident of Solomon, Kansas, advising her of his purchase of her brother's interest in the land and that the land would be sold by order of court in the fall, and that if she wanted to sell her interest he might buy it from her. Mrs. Stevens' reply to this letter is not found in the record. June 5 Dazey wrote her as follows: "Your letter of the 4th received. In reply will say that I think we could make a trade, providing, however, that you understand the law of descent in Illinois and that it gives the widow (your mother) one-third of all land as dower. That would leave you something like 11 acres, but, of course, at your mother's death you would inherit your part of all the property that she left while I could not participate in that. Now, if you understand it this way you let me know at once, as I intend to be in Abilene, Kan., in the next week and we might arrange to meet," etc. Shortly after the receipt of this letter Mrs. Stevens came to Findlay and made arrangements pursuant to which she conveyed all her interest in said land to Dazey on June 22, 1915. There is a conflict in the evidence as to

what actually occurred in the course of these negotiations, but as Mrs. Stevens has not appealed from the decree of the lower court it is unnecessary to consider those matters, except in so far as they have a bearing upon the subsequent transactions between Mrs. Binkley and Mrs. Land by which Vennum acquired deeds from them.

. Mrs. Stevens testified that she was selling an undivided two-thirds of her undivided one-ninth interest in the land for $200 per acre, less interest on the same at five per cent from the date of the sale until March 1, 1916. The evidence tends to show that the land was worth at that time from $200 to $225 an acre if free and clear of the dower interest. It subsequently was sold at the master's sale in this proceeding for $222.80 an acre. Dazey testified that he purchased all of her interest in the land for the lump sum of $2350, less interest at five per cent from the date of sale to March 1, 1916. He does not, however, testify as to any facts constituting the basis of his offer of a lump sum, while Mrs. Stevens testified positively that the sale was made at the rate of $200 per acre, and she produced a slip of paper on which she testified Dazey figured the amount coming to her at that price, and which shows 11.77 acres of land at $200 per acre, $2354. She testified that he deducted about $117.70 as interest, leaving a balance of $2240 due her; that he paid her $40 in cash and gave her a certificate of deposit for $2200 more. There is no dispute as to the amount paid her. She further testified that before the deal was consummated Dazey offered her a commission of $50 on each interest if she would induce her sisters, Mrs. Binkley and Mrs. Land, to sell their respective interests in the land to him for $2000, and that under his direction she wrote her sisters on June 11, 1915, in which letter she states "that John sold out and I have got an offer for $2000, and you take that for your part. That will let us out of all the court proceedings. This is just for the 160 acres. * * * Ma gets one-third of the 160 acres and that only leaves us heirs 11.77 acres,—

nearly 12 acres,—so you see that is a pretty good price after all expenses paid, back and forth," etc. In a postscript to the letter she states: "You talk to Linnie and see what she will do and both of you answer back at the same time and send this letter on to May [Mrs. Merritt] as soon as you read it, for I am going to sell whether you do or not." This letter was mailed by Dazey and after its receipt by Mrs. Binkley and Mrs. Land was forwarded to their sister, Mrs. Merritt, and it was produced and introduced in evidence on the hearing by appellants, pursuant to a notice served on them by appellees.

Shortly after Dazey procured the deed from Mrs. Stevens he and Vennum drove to the homes of Mrs. Binkley and Mrs. Land in Stark county, Indiana, where on July 22, 1915, they procured the deeds here in question for the interests of Mrs. Binkley and Mrs. Land in said quarter section, the title being taken in the name of Vennum. In these negotiations the testimony tends to show that Dazey did most of the talking. Both Mrs. Binkley and her husband testified that Dazey stated to them that he would give them $200 an acre for their land, and that it was distinctly understood that they were only selling an undivided two-thirds of their one-ninth interest in the land, or the equivalent of 11.77 acres, and were not conveying their interest in the one-third representing the part subject to their mother's dower. They further testified that Dazey and Vennum figured up the amount it would come to, and after deducting interest at the rate of five per cent from that date to March 1, 1916, stated the amount was $2137.50, which amount was paid to them by Vennum's check. Both Mrs. Binkley and her husband appear from the record to be persons of limited education, and it is clear that they did not undertake to figure up the value of their interest but relied absolutely upon the figures made by Dazey and Vennum. Mrs. Binkley further testified,—and in this she is corroborated by the testimony of her husband and Mrs. Land,—that after the deed

was executed she called Mrs. Land over the telephone and told her that she had sold her land at $200 an acre; that it would be 11.77 acres and that it did not include that part which belonged to their mother, and that if Mrs. Land desired to sell at the same price she would send the parties over. Both she and her husband testified that Dazey and Vennum were in the room and heard this conversation over the 'phone with Mrs. Land, and that she then told them her sister would sell at that price. Thereupon Dazey and Vennum drove to Mrs. Land's home, a short distance away, where a similar transaction was had with her, and she executed a deed to Vennum conveying to him, by its terms, all her interest in the land. Both Mrs. Land and her husband testified that it was definitely understood that they were selling but an undivided two-thirds of their one-ninth interest in the land, or 11.77 acres, and were not selling that portion which was subject to Mrs. Land's mother's right of dower. At the time the respective deeds by Mrs. Binkley and Mrs. Land were executed each executed a master's receipt in blank for the amount of her distributive share in case of sale of the land in the partition proceedings. The master's receipt is entitled, "In the cause of J. E. Dazey *vs.* Robertie Binkley.—In the circuit court to the March term, A. D. 1916," and reads: "Received of the master in chancery of the circuit court of Moultrie county, Ill., .... dollars in full of all my interest in the above entitled cause." It was executed in duplicate and witnessed by Vennum, and both receipts were delivered to Dazey and kept by him in his vault until produced on the trial. Both Mrs. Binkley and Mrs. Land testified that they had no recollection of executing these receipts. It further appears from the record that in September following these transactions Vennum went to the home of Mrs. Merritt, one of the sisters living near Terre Haute, Indiana, and exhibited to her the deeds from her sisters and offered to buy her interest in the property at $200 an acre; that he had with him a deed prepared for her exe-

cution by which she would convey to him all her interest in said quarter section; that she refused to execute the deed in the form it was drawn but told him she was willing to take $200 an acre for her land and execute a deed reciting the conveyance of 11.77 acres of land at that price, which offer Vennum refused to accept, although she and her husband testified that he assured her the deed he asked her to sign would not convey her interest in the one-third which was subject to her mother's right of dower.

Dazey and Vennum testified denying substantially all of the testimony of Mr. and Mrs. Binkley and Mr. and Mrs. Land as to what occurred at their respective homes at the time these deeds were executed. Dazey also denied the testimony of Mrs. Stevens as to the figures on the slip of paper in evidence, which she testified was the basis used for figuring on her sale of 11.77 acres at $200 an acre, and claimed that they simply offered $2200 as a lump sum.

From a fair consideration of the testimony and the record as a whole in this case the great preponderance of evidence is with appellants, and plainly shows that they were deceived as to the effect of the deeds and the amount of land in which they were conveying their interests by their deeds. It is obvious from the testimony that in all cases they understood they were only conveying the equivalent of 11.77 acres of land and were not conveying their interests in the undivided third which was subject to the dower of the mother, although the deed from Mrs. Binkley and that from Mrs. Land were so drawn as to convey all their interests in the entire quarter section. The letter of June 5, 1915, from Dazey to Mrs. Stevens, heretofore quoted, beyond question was intended by Dazey to cause her to understand that she was only conveying her interest in the equivalent of 11.77 acres of land and no more. The letter strongly corroborates the testimony of appellants as to the representations made to them as to the amount of interest which they were to convey at the time they executed the deeds. The letter from Mrs.

Stevens to her sisters, dated June 11, written at the sugges-
tion of Dazey and in his presence, also strongly corroborates
this conclusion. While Dazey in his testimony denied that
he dictated this letter or that he saw it or read it over before
it was mailed, he does admit that the letter was written by
Mrs. Stevens for the purpose testified and that he sat op-
posite to her at the desk while she was writing it and that
she talked to him about it. Anyone who reads this letter
in the light of the evidence in this record cannot · for a
moment question that the writer understood, and that the
persons to whom it was written were intended to understand
and believe, that the only interest that Dazey was seeking
to purchase from each in the land at that time would· be
the equivalent of 11.77 acres, and did not include the heirs'
interest in the one-third which was subject to the mother's
dower. We find no reason suggested in the briefs why Mrs.
Stevens wrote this letter if not for the purpose of aiding
Dazey in the purchase of the land. This being so, it seems
reasonable that he should be advised with reference to its
contents before it was mailed. Beyond doubt, from this
record, the conclusion must be reached that Dazey was fully
aware of the contents of the letter when it was mailed.
Taking this letter in connection· with the letter of June 5
written by him to Mrs. Stevens, the conclusion is irresistible
that Dazey was endeavoring to create the impression in the
minds of all the Neff heirs that they each had only an in-
terest equivalent to 11.77 acres of land which they could sell
at that time. Dazey admits that at the time he was talking
with Mrs. Binkley and Mrs. Land he knew that they had
received a letter from their brother, John, and also a letter
from Mrs. Stevens. If he knew, as we believe he did, the
contents of this letter of Mrs. Stevens, he knew that it had
been represented to both Mrs. Binkley and Mrs. Land that
the only interest which they had in the land at that time
which he was trying to purchase was an interest equivalent
to 11.77 acres. If this was his understanding and the un-

derstanding of the grantors, Mrs. Binkley and Mrs. Land, when they executed their deeds, then it is manifest that in executing the deeds the parties were under a mutual mistake as to the effect of those deeds; that it was not the intention of the parties that the grantors should part with their reversionary interests in the third that was subject to the mother's life interest as dower. If such is the proper conclusion to be derived from this record, then the mistake was mutual and the deeds should be reformed and made to conform to the proper intention and understanding of the parties. (*Kyner* v. *Boll,* 182 Ill. 171.) On the other hand, if Dazey knew that the dower interest was only a life use of one-third of the land and that the grantors had been deceived and led to believe by his letters and statements made to them and to the other children that the deeds of Mrs. Binkley and Mrs. Land conveyed by their terms all their interests in the land, including their interests in that portion subject to the dower, the deeds obtained under such circumstances cannot be permitted to stand in a court of equity. In *Whitney* v. *Roberts,* 22 Ill. 381, this court held that since the organization of courts of equity they have exercised large power in relieving against fraud; that in whatever form the fraud appears it will render the act void, for the reason that the law will not sanction such dishonest practices by enabling an individual to acquire through his deception any right or interest of another. In that case it was also said (p. 383): "And courts of equity have gone so far as to hold that if an instrument be obtained from persons ignorant of their rights but whose rights are known to the party obtaining the instrument, they will relieve even though no fraud or imposition has been practiced." The reasoning and holding in that case are most applicable to the facts here, and, in any view that may be taken of this case, the deeds of Mrs. Binkley and Mrs. Land cannot be held to convey any more than their respective individual one-ninth interests in an undivided two-thirds of the land.

Counsel for appellees contend that there is no sufficient proof that Dazey and Vennum were acting together, or that Dazey has any interest in the interests conveyed to Vennum to authorize a court of equity to grant relief as against Vennum. The evidence shows, without contradiction, that Dazey and Vennum were business associates in the bank at Findlay and that Dazey was the person who was originally trying to purchase the interests of the several heirs, including those of Mrs. Binkley and Mrs. Land, and that it was he who induced Mrs. Stevens to write the letter heretofore mentioned. The evidence further shows that Vennum and Dazey went together to purchase the interests and that Dazey conducted substantially all the negotiations. Under the facts as shown on this record, if Dazey and Vennum were not jointly interested in the enterprise they were at least both responsible for the representations and statements made to appellants with respect to their interests in the land and the amount of land they were conveying by the deeds. In either event, Vennum would be bound by the statements and representations made by Dazey in his presence, and he would also be chargeable with any false or fraudulent representations which Dazey may have made to the appellants which induced them to part with their interests in the land.

Counsel for appellees further argue that under appellants' cross-bills they were not entitled to the relief which they seek, for the reason that they did not tender back the consideration paid them and do not ask that the deeds be decreed void, but, on the contrary, ask that the deeds be reformed so as to convey but their undivided one-ninth interests in an undivided two-thirds interest of the property, and by inserting the true consideration in the deeds, which was $2354, and that appellees be decreed to pay them each the additional sum of $144.95 required to make up the balance of the consideration, on the basis of 11.77 acres at $200 an acre. The evidence shows that appellants offered to repay Dazey the consideration received on the sale of the

land and that he refused to accept it. It further appears that Dazey and Vennum were the ones who figured up the amount due appellants and that the latter accepted without question Dazey's and Vennum's statements as to such amount. We think the proof shows most satisfactorily that appellants were selling, and that Dazey and Vennum both so understood, only the equivalent of 11.77 acres of land, each, at $200 per acre, and that the value of the land should have been figured on that basis, less interest at five per cent from that date to March 1, 1916, and that whatever mistake or wrong was committed in the premises was committed by Dazey and Vennum. Appellants were not bound to ask that the deeds,—which, either through the mutual mistake of the parties or through fraud and misrepresentations of the grantees, had been so drawn and executed as to convey a larger interest than it was the intention of the grantors to convey,—should be declared void. On the contrary, appellants had a right to insist that the deeds be reformed so as to conform to the contract that was actually made by the parties. On this record the trial court should have decreed that the deeds be reformed in accordance with the prayer of the cross-bills, and that appellees be required to pay appellants the balance due as consideration for their land, figured on the basis of 11.77 acres at $200 an acre.

In both the petitions for rehearing in this cause there is a sharp dispute as to whether, on the pleadings and the record before us, counsel for appellants have a right to raise the question whether or not appellee Dazey is entitled to a partition of the land in question, it being argued by counsel for appellants that the instrument from the son, John Neff, to Dazey, while in the form of a deed conveying his interest, was in reality nothing but a mortgage, and that therefore Dazey, at the time he filed his bill for partition, had no such interest in the fee of the land as would entitle him to maintain a bill for partition. Counsel for appellees insist, on the contrary, that the pleadings in no way prop-

erly raise this question as to appellants. From an examination of the record we conclude there is no fair basis for this argument of counsel for appellees. The original bill filed in this case, among other things, alleges that by the purchase from John Neff Dazey became "seized in fee of said described premises,"—that is to say, "your orator and each of said parties became seized of an equal undivided one-ninth part of said premises." The answer of defendants Mrs. Binkley and Mrs. Land states that "these defendants deny that * * * the complainant purchased all the interest of said John S. Neff in and to the above described premises and they pray strict proof of said allegations. They further deny the allegations in said bill that said J. E. Dazey became seized, by virtue of said supposed purchase, with the defendants in said bill of complaint, of an undivided one-ninth, each, interest in said premises subject to said dower." It is thus clear that Dazey alleged that he was the owner by virtue of the John S. Neff deed, and that appellants denied such ownership and made the question of such ownership a direct issue for proof.

Counsel for appellees seem to assume that they were not required, under the pleadings, to prove ownership. This court has said that "whatever is not admitted by the answer to be true in a chancery proceeding must be proved by the complainant although it is not denied." (*Hopkins* v. *Medley*, 97 Ill. 402.) The rule of law is well settled that when any allegations of the bill are denied by the answer the complainant must prove such allegations or he cannot recover thereunder.

It is contended by counsel for appellees that the allegations in the answer as to the John Neff deed to Dazey being a mortgage are untrue. The question whether the Neff deed was a mortgage could clearly be raised under the allegations of the bill as to ownership and the denial in the answer. That the question as to whether this Neff deed was a mortgage was understood to be raised by the plead-

ings is clearly shown by the original briefs as well as by the pleadings other than the original bill and answers. Both appellants and appellees in their original briefs filed in this case argue the question as to whether the deed was a mortgage, and no question was raised until the first petition for rehearing was filed, as to this point not being properly raised by the pleadings.

Counsel for appellees also argue that the only proof as to the John Neff deed being a mortgage was given by John Neff, and that as he dismissed his cross-bill and struck out the evidence in support thereof there is no evidence in the record that in any way tends to show that his deed was only intended as a mortgage. There is a stipulation found in the record under which John Neff's testimony was to be taken by deposition in Arkansas. That stipulation was joined in by the attorney for appellants, Mrs. Binkley and Mrs. Land. The stipulation seems to provide that Dazey and Vennum should introduce John Neff's deposition on the hearing, but on the trial of the case counsel for appellees failed to introduce this deposition and it was introduced by counsel for appellants, and on the trial appellants claimed the benefit of all the evidence offered on the cross-bill of John Neff, and their counsel in no way consented to the withdrawal of this evidence. It was withdrawn on a stipulation between the counsel for Dazey and Neff himself. This evidence, on this state of the record, could not be withdrawn from the record without the consent of appellants or their counsel. The testimony of John Neff taken on this deposition, largely brought out by the examination by counsel for appellants and introduced by the same counsel on the hearing and uncontradicted, is ample to justify the court in finding that the deed from Neff to Dazey, although absolute in form, was but a mortgage. This being so, Dazey, at the time he filed his bill for partition, was not the owner of such an interest as to entitle him to maintain a bill for the partition of the land. The evidence also shows that the

heirs of Joseph Neff entered into an agreement by which the land was not to be partitioned until eighteen months after the death of Joseph Neff, and the evidence also tends to show that Dazey knew of this agreement at the time of his dealings with John Neff. If Dazey did have notice of this agreement before he made the alleged purchase from John Neff it needs no citation of authorities to show that he would be bound thereby, the same as the original heirs who entered into the agreement.

As it appears that the purchaser at the master's sale has paid to the master the purchase price bid for the land and that said money so paid has been distributed to the various parties entitled thereto under the decree of distribution, the chancellor will, in his decree hereafter entered, provide that each of the owners of interests in the land shall pay to the master the amount he or she received of such purchase price within a reasonable time to be fixed by the court and that the master shall refund to the purchaser the amounts so re-paid, and that such respective amounts shall be a charge upon each owner's interest until re-paid, and that in the event of failure of any owner to re-pay within such reasonable time so fixed by the court, the court may by a proper order enforce such re-payment by a sale of such interest; and the court shall also make an equitable apportionment of the interest on the purchase price (if any) and of the rents and the cost of the partition proceedings and master's sale, and of the interest or discount, if any, on the amounts still due from Dazey and Vennum to the heirs whose interests they purchased.

The decree of the circuit court will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.    *Reversed and remanded.*